IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RAYMOND PRINCE                                                                    PLAINTIFF

V.                              Case No. 4:24-CV-00672-JM-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration[1]                                    DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.    INTRODUCTION

On January 17, 2021, Plaintiff Raymond Prince ("Prince") filed a Title II application with the Social Security Administration ("SSA") for a period of disability and disability insurance benefits. (Tr. at 14). In the application, he alleged disability beginning on May 9, 2020. *Id*. The application was denied initially and on reconsideration. *Id*.

---

[1] As of the date of this Recommendation, Frank Bisignano is the Commissioner of the Social Security Administration ("the Commissioner"). Under Federal Rule of Civil Procedure 25(d), he is automatically substituted as the Defendant.

After conducting a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision, finding that Prince was not disabled from the alleged onset date of May 9, 2020, through the date of the decision, March 5, 2024. (Tr. at 14–25). The Appeals Council denied Prince's request for review. (Tr. at 1–6). Thus, the ALJ's decision now stands as the final decision of the Commissioner, and Prince has requested judicial review. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.    THE COMMISSIONER'S DECISION

The ALJ found at Step One[2] that Prince has not engaged in substantial gainful activity since the alleged onset date of May 9, 2020. (Tr. at 16). At Step Two, the ALJ concluded that Prince has the following severe impairments: degenerative disc disease with radiculopathy and migraines. *Id*.

At Step Three, the ALJ determined that Prince's impairments did not meet or equal a Listing.[3] (Tr. at 18–19). The ALJ then found that Prince has the residual functional

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[3] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). "[F]or adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Id.*

capacity ("RFC") to perform work at the sedentary exertional level, with the following additional limitations: (1) can no more than occasionally stoop, kneel, crouch, or crawl; (2) can no more than occasionally use foot controls with the bilateral lower extremities; (3) can no more than occasionally climb stairs and ramps; (4) cannot climb ladders, ropes, or scaffolds; (5) no concentrated exposure to temperature extremes or humidity; (6) no concentrated exposure to vibrations, fumes, odors, gases, or poor ventilation; (7) no work around hazards, such as unprotected heights or dangerous moving mechanical parts; and (8) no exposure to noise above the moderate level as defined in the Dictionary of Occupational Titles. (Tr. at 19).

At Step Four, the ALJ decided that Prince is unable to perform any of his past relevant work. (Tr. at 24). Relying upon testimony from a Vocational Expert ("VE"), the ALJ determined, based on Prince's age, education, work experience, and RFC, that there are jobs in the national economy that Prince can perform. (Tr. at 24–25). Therefore, the ALJ concluded that Prince was not disabled. *Id.*

## III.   DISCUSSION

### A.   Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations

omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950-51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B.    Prince's Arguments on Appeal

Prince contends that the evidence supporting the ALJ's decision is less than substantial, warranting reversal. Specifically, Prince argues that: (1) the ALJ erred in not discussing conclusions made by two other agencies, the Department of Veterans Affairs ("VA") and the Office of Personnel Management ("OPM"), (Doc. 13 at 3–4); (2) the ALJ failed to consider all of Prince's impairments in combination, *id.* at 5; (3) the ALJ erred in his evaluation of Prince's subjective complaints, *id.*; and (4) the ALJ erred at Step Five, *id.* at 6–8. The Court considers each argument in turn.

## 1.    Determinations of the VA and OPM

Prince avers that the ALJ should have discussed and relied upon disability determinations made by the VA and OPM. (Doc. 13 at 3–4). OPM approved Prince's application for disability retirement in April 2020. (Tr. at 364–66). VA medical records indicate that Prince, a veteran, had an overall service-connected disability of 100% due to a back impairment and radiculopathy, effective October 2, 2020. (Tr. at 22, 40, 216, 224–25, 450, 1386). Prince argues that the ALJ should have considered and discussed these findings and given them substantial weight. For the reasons set forth below, the Court finds that the ALJ properly considered the determinations of the VA and OPM.

On March 27, 2017, the SSA implemented a regulation change, stating that, "in claims filed . . . on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504; *see Mowrer v. Kijakazi*, 686 F. Supp. 3d 764, 766 (S.D. Iowa 2023) (discussing regulation). The regulation further provides that "we will consider all of the supporting evidence underlying the other governmental agency . . . decision that we receive as evidence in your claim . . . ." 20 C.F.R. § 404.1504. So, the Court turns to the medical evidence of record.

To begin, the ALJ reviewed Prince's VA medical records. *See, e.g.* (Doc. 15 at 5–6; Tr. at 20, 368–1025). Those records show that Prince has documented instability in his back. A 2019 lumbar CT scan showed degenerative disc disease with radiculopathy. (Tr. at 940). A 2021 lumbar spine MRI showed a disc herniation and moderate-to-severe

stenosis. (Tr. at 420–421). A 2021 lumbar CT scan revealed a large L4-L5 protrusion with severe stenosis. (Tr. at 416–417). For treatment, Prince used steroid injections, medication, radiofrequency ablation, and a TENS unit. (Tr. at 420–424, 1127, 1163, 1163–1164). This treatment provided some relief.[4]  At a doctor's appointment in December 2022, Prince showed normal gait, range of motion, and normal lower extremity strength and sensation. (Tr. at 1566). Prince's next appointment with his primary care physician ("PCP") was not until almost a year later, in November 2023, after Prince injured his thoracic spine. (Tr. at 23; 1372). During that appointment, Prince told his PCP that ice and muscle relaxers helped with his pain. (Tr. at 1372). His PCP recommended a conservative course of treatment, consisting of Tylenol, anti-inflammatory medication, and muscle relaxers.[5]  (Tr. at 1376).

Prince had surgery on his back in 2017, before the relevant time period. (Tr. at 40–42). He declined any further back surgery, despite claiming that his back pain was disabling. *Id*. Moreover, Prince could do daily activities like walking his dog, going to doctors' appointments, and running errands. (Tr. at 17, 1386, 1511).

The ALJ discussed the above-mentioned records. He also discussed the 2019

---

[4] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Locher v. Sullivan*, 968 F.2d 725, 728 (8th Cir. 1992).

[5] The need for only conservative treatment contradicts allegations of disabling conditions. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

opinion of Dr. Phillip Snodgrass, M.D., a doctor at the VA.[6] (Tr. at 22, 364–367). Dr. Snodgrass said that Prince was unable to stand for long periods or walk for short distances and that Prince could not engage in physical combat. *Id.* Dr. Snodgrass stated that, due to back pain, Prince would have trouble sitting. *Id.* The ALJ found this opinion unpersuasive because: (1) it was based on a review of medical records that predated the alleged onset date when Prince was still working, and (2) it was vague in its functional limitations on Prince's activities. (Tr. at 22).

All told, it reasonably appears that the ALJ *did* consider the evidence underlying the VA and OPM decisions on disability and that he complied with the SSA regulation governing the assessment of other agencies' determinations. The Court thus discerns no error with respect to Prince's first point of appeal.

### 2.    Consideration of All Impairments

Prince also alleges that the ALJ did not fully consider the effects of all of Prince's impairments. Again, the Court disagrees and finds that the ALJ did properly consider: (1)

---

[6] The Administration promulgated new regulations—effective March 27, 2017—governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and is consistent with other evidence in record," *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (Jan. 18, 2017), & Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).

the effects of all of Prince's impairments, and (2) the opinion of Dr. Richard McKelvey, who limited Prince to sedentary work.

First, as to Prince's migraines, Prince did establish that he had migraine headaches in addition to his back condition and radiculopathy. (Doc. 13 at 5). But the ALJ discussed Prince's migraines and noted that, with medication, the migraines were not as problematic. (Tr. at 22). Sumatriptan or Excedrin helped stop Prince's migraines to a moderate degree. (Tr. at 1284). In January 2023, Prince told his doctors that his migraines were not as frequent. (Tr. at 1529–30). Prince declined a neurology consult for migraines. (Tr. at 21, 1530–1534). In sum, the ALJ discussed the migraine-related evidence and assigned an RFC that incorporated migraine precautions, with limited exposure to noise, vibration, and temperature extremes. (Tr. at 19–22). The RFC properly accounted for Prince's migraines.

Second, the ALJ discussed Prince's alleged post-traumatic stress disorder ("PTSD") diagnosis at Step Two, although he found it to be non-severe, which was supported by the record. In fact, the ALJ noted that Prince was able to work as a VA police officer for many years despite his PTSD diagnosis/symptoms. (Tr. at 55–56). Prince also reported to his PCP in January 2023 that his mental health medication and service dog had helped him; Prince reported in October 2023 that his PTSD was stable on his current medication. (Tr. 17). The ALJ properly considered all of Prince's alleged impairments and found that they were not disabling.[7]

---

[7] *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work and, thus, properly considered the combined effects of impairments).

Finally, the ALJ discussed the written opinion of Dr. McKelvey.[8] Dr. McKelvey opined that Prince was unable to perform even sedentary work and would need a cane to ambulate and would need to lie down two hours per day at work. (Tr. at 23, 1361–1366). The ALJ found this opinion partially persuasive because, although his opinion is generally consistent with the longitudinal record, Prince did not follow up for treatment with his PCP for over a year, and his conditions had improved over time with treatment. (Tr. at 23) ("after the referral for caudal injections in December 2022, the claimant did not return to his primary care physician until November 2023 for back pain and even then, his back pain resulted from a recent injury that he obtained"). Thus, the ALJ found Dr. McKelvey's limitation of laying down two hours in an eight-hour workday to be unwarranted. *Id.* The ALJ properly addressed Dr. McKelvey's findings and placed appropriate physical restrictions on Prince in the RFC.

The ALJ, in fashioning an appropriate RFC based on Prince's credible limitations, stated:

> The undersigned finds that his degenerative disc disease with radiculopathy would limit him to sedentary work, with occasionally stooping, kneeling, crouching or crawling. And, *because the pain radiates down to his feet*, the claimant would be limited to occasionally use of foot controls with the bilateral lower extremities. However, *because the claimant is prescribed medication for his migraines that he reports make him groggy*, he cannot climb ladders, ropes or scaffolds or work around hazards such as unprotected heights or dangerous moving mechanical parts. Additionally, *to reduce triggers for his migraines*, the claimant would be limited to no exposure to temperature extremes, humidity, vibrations, fumes, odors, gases or poor ventilation and no exposure to noise above the moderate level as defined by

---

[8] The ALJ and the administrative transcript erroneously refer to Dr. McKelvey as Dr. McLoolery. (Tr. at 23; Doc. 9-1 at 3).

the Dictionary of Occupational Titles (DOT).

(Tr. at 22) (emphasis added). Prince's argument that the ALJ failed to consider the effects of all of Prince's impairments is belied by the record. *See id.* ("Taken as a whole, the claimant's limitations from his impairments appear to restrict him to sedentary work."). This Court discerns no error.

### 3.    Subjective Complaints

Prince also avers that the ALJ did not properly consider his subjective complaints.[9] (Doc. 13 at 5). Again, the Court disagrees and finds that the ALJ did properly consider Prince's subjective complaints.

Prince complained that his back pain and radiculopathy basically rendered him bedridden and that he could not do many daily activities. (Tr. at 50). However, Prince's wife filled out a Third Party Function Report, stating Prince could perform some meal preparation and laundry chores and assist with pet care. (Tr. at 20, 314–321). She also said Prince could drive a car and go out alone to shop. (Tr. at 317). This report undermines Prince's claims that he was bedridden. *Id.* The ALJ also noted that Prince experienced moderate improvement with treatment, needed only conservative treatment, and opted not

---

[9] "When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citations omitted). "But an ALJ need not explicitly discuss each factor," and he "may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (citations and internal quotation marks omitted).

to pursue surgery or a neurology consult. *See, e.g.* (Tr. at 22) ("While the claimant has had back pain for several years, the treatment has been conservative with medication, a TENS unit, caudal injections and ablations and the claimant did not want a referral for surgical evaluation or other additional treatment modalities as would be expected if the claimant's pain was out of control."). Lastly, the Court notes that Prince testified that he is a mason and participates in his local lodge. (Tr. at 49–50). Based on these factors and corresponding evidence, the ALJ found that Prince's subjective complaints were inconsistent with the record. (Tr. at 20). This was a fair appraisal of the evidence.

### 4.    Step Five

Finally, without much elaboration, Prince argues that the ALJ did not include all of his credible limitations in the hypothetical he posed to the VE at Step Five. (Doc. 13 at 6–8). However, a "hypothetical question need only include those impairments and limitations found credible by the ALJ," *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (citation omitted). The ALJ proposed a hypothetical for sedentary work, with occasional postural limitations and environmental restrictions, which captured Prince's functional abilities. (Tr. at 61–63). The VE testified that certain jobs would be available that Prince could perform based on the hypothetical. *Id*. Moreover, contrary to Prince's claim, the ALJ did not overlook meaningful or relevant evidence; he discussed the medical records, including those related to the VA/OPM decisions, and he incorporated Prince's hearing testimony, as well as medical opinion evidence, into his decision. (Tr. at 19–24). For all these reasons, the ALJ did not err at Step Five.

## IV.    CONCLUSION

The Court is sympathetic to Prince's arguments. The Court recognizes that Prince's life was forever changed after an elevator accident at work, and it appreciates Prince's service as a federal law-enforcement officer. That said, there is substantial evidence to support the Commissioner's decision that Prince was not disabled. The ALJ was not bound to discuss the other agencies' decisions, as long as the ALJ considered all of the supporting evidence underlying those decisions (which the ALJ did); the ALJ properly evaluated all of Prince's impairments; the ALJ fairly evaluated Prince's subjective complaints; and the ALJ did not err at Step Five.

IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's decision be AFFIRMED.

2.    Judgment be entered for the Defendant.

DATED this 23rd day of June, 2025.

_Benecia Moore_
UNITED STATES MAGISTRATE JUDGE